In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 25-2380

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANGELICA MENDOZA RUBIO,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 23-cr-00066 — **William M. Conley**, *Judge.*

———————————

ARGUED APRIL 15, 2026 — DECIDED JULY 21, 2026

———————————

Before BRENNAN, *Chief Judge*, and JACKSON-AKIWUMI and
MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. Defendant Angelica Mendoza
Rubio pleaded guilty to conspiracy to commit money laun-
dering, in violation of 18 U.S.C. § 1956(h). Mendoza Rubio
now appeals her sentence, arguing that the district court erred
by applying a sentencing enhancement based on her role as a
manager or supervisor in the conspiracy and by failing to con-
sider the need to avoid unwarranted sentencing disparities

between coconspirators. Because the record supports that Mendoza Rubio directed and managed her coconspirators, and her below-guidelines sentence was not unreasonably longer than those of her coconspirators, we affirm.

**I**

Between December 2020 and April 2021, Mendoza Rubio, a licensed accountant in Mexico, participated in a conspiracy to launder more than $5.1 million in fraud proceeds. Mendoza Rubio acted as a broker, laundering money for other criminals by converting U.S. cash to Bitcoin in exchange for a fee.

The conspiracy was layered and complex. A coconspirator, Sinval De Oliveira, acted as a bulk cash carrier. He traveled to pick up cash fraud proceeds and sent confirmation of the pickup to Mendoza Rubio, who notified the laundering client. Another coconspirator, Carlos Batista De Oliveira Neto, then told De Oliveira where to deposit the cash. Neto controlled the deposit accounts, though he paid other individuals to hold the accounts in their names to hide them. De Oliveira tracked deposits with a ledger, which he would send to Mendoza Rubio. Once the money was deposited, Neto transferred the funds to a second account. Mendoza Rubio then directed Neto when and how much Bitcoin to purchase and provided the client's Bitcoin wallet address for deposit.

The money laundering network was discovered when authorities investigated the theft of cash from a Wisconsin business. Mendoza Rubio pleaded guilty to a superseding indictment charging her with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). A binding plea agreement limited her possible prison sentence to between three and six and a half years.

In the first iteration of the presentence report ("PSR"), the total offense level calculation did not include a role enhancement for acting as a manager or supervisor in a criminal scheme pursuant to United States Sentencing Guidelines ("the Guidelines") § 3B1.1(b). Instead, the PSR characterized Mendoza Rubio as simply a "go-between" for the two sides of the conspiracy. The government objected, arguing, in relevant part, that Mendoza Rubio should receive a three-level enhancement under U.S.S.G. § 3B1.1(b) because of her role as a manager or supervisor in the scheme. Mendoza Rubio objected to the enhancement. The probation office agreed with the government and revised the PSR to add the three levels.

At the sentencing hearing, the district court agreed that the § 3B1.1(b) role enhancement was appropriate. In the court's view, Mendoza Rubio coordinated and directed the activities of De Oliveira and Neto, and Mendoza Rubio's participation as an accountant was "critical" to the success of the scheme. The court sentenced Mendoza Rubio to 60 months' imprisonment—which was below the guidelines range of 108–135 months and roughly in the middle of the plea agreement's binding range—followed by a three-year term of supervised release.

Mendoza Rubio appeals, arguing that she did not qualify for any role enhancement and that the district court failed to consider unwarranted sentencing disparities between her and her coconspirators, in violation of 18 U.S.C. § 3553(a)(6).

## II

### A

We review the district court's findings of fact for clear error and whether those facts support a role enhancement de novo. *United States v. Melega*, 173 F.4th 907, 911 (7th Cir. 2026).

U.S.S.G. § 3B1.1(b)'s role enhancement applies to reflect certain defendants' "greater contributions to" and "culpability in" the offense. *United States v. Colon*, 919 F.3d 510, 517–18 (7th Cir. 2019). When "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," the offense level increases by three points. U.S.S.G. § 3B1.1(b). Mendoza Rubio argues that she was not a manager or supervisor because she was simply a liaison between the client and her coconspirators, over whom she exercised no control.

The Guidelines do not define "manager" or "supervisor," but the accompanying commentary provides factors to help courts distinguish between a leader/organizer (which would result in a greater enhancement) and a manager/supervisor:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. Mendoza Rubio argues that the enhancement does not apply because some of these factors are

not applicable here. For example, she earned a significantly lower commission than her coconspirators; she never recruited any accomplices; and she says that she had limited decision-making authority. But not all factors need to be present to apply the enhancement. *Melega*, 173 F.4th at 913.

Instead, the critical question is whether "the defendant exercised some control over others involved in the crime or was responsible for organizing others in carrying out the operation." *Colon*, 919 F.3d at 518 (citing *United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir. 1991)). In applying a § 3B1.1 enhancement, we have urged courts to take "a more practical analysis" and to use "commonsense judgment about the defendant's relative culpability given [her] status in the criminal hierarchy." *United States v. House*, 883 F.3d 720, 724 (7th Cir. 2018) (quoting *United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015)); *see also United States v. Mustread*, 42 F.3d 1097, 1104 n.3 (7th Cir. 1994) ("[T]he ultimate question is what relative role the defendant played."). Thus, if a sentencing court "identif[ies] instances where the defendant orchestrated or oversaw the [] operation and those involved in it," those instances can be enough. *Colon*, 919 F.3d at 519; *see also Melega*, 173 F.4th at 913.

The district court here did not clearly err in applying the three-level manager/supervisor enhancement. The record supports that Mendoza Rubio played an active and critical managerial role in the scheme. Though Mendoza Rubio claims she had no real control over her coconspirators, control need not include "the power to dictate [others'] actions." *United States v. Young*, 590 F.3d 467, 472 (7th Cir. 2009). It is enough to "[o]rchestrat[e] or coordinat[e] activities performed by others, or delegat[e] tasks such as delivery or pay-

ment." *United States v. Barnes*, 141 F.4th 882, 888 (7th Cir. 2025) (internal citations omitted). And Mendoza Rubio did just that. On multiple occasions, Mendoza Rubio oversaw and tracked De Oliveira's cash pickups, worked with him to keep a ledger, and closely monitored his deposits into accounts. She also directed Neto when to buy Bitcoin and provided him with the Bitcoin wallet address to deposit the laundered funds. And she was the only individual who coordinated with the client to obtain the wallet address. Despite her arguments to the contrary, Mendoza Rubio was more than just a middleman or a "go-between" between her coconspirators and clients. *Cf. Colon*, 919 F.3d at 518 (citing *Brown*, 944 F.2d at 1382) ("[M]iddleman status alone cannot support a finding that a defendant was a supervisor, manager or leader of a criminal activity."). As the district court noted, she was "critical to the overall success of the scheme."

Mendoza Rubio argues that the district court erroneously conflated the importance of her role in the scheme's *success* with whether she had a greater degree of *responsibility*. But the court's discussion of Mendoza Rubio's "crucial" role was tethered to the coordination and direction she provided by "manag[ing] both sides," "creat[ing] the anonymity" for her clients, and acting as "the ultimate person who received the materials." Although the importance of a defendant's role to the success of a scheme is not a factor set forth in the Guidelines' commentary, it was not clearly erroneous for the district court to find that Mendoza Rubio's contributions to the scheme's success were intertwined with her significant level of responsibility.

Ultimately, the record shows that Mendoza Rubio exercised enough control and influence over her coconspirators to

support a three-level enhancement under § 3B1.1(b) as a manager or supervisor.

B

We review de novo whether a sentencing court procedurally erred by failing to consider the 18 U.S.C. § 3553(a) factors. *United States v. Patel*, 921 F.3d 663, 669–70 (7th Cir. 2019). And we review the reasonableness of a sentence for abuse of discretion. *Id.* at 669.

A sentencing court must consider "the need to avoid unwarranted sentence disparities" between similarly situated defendants, which can include codefendants and coconspirators. 18 U.S.C. § 3553(a)(6); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010). And though the court "need not explicitly articulate conclusions with respect to each factor," a failure to consider the factors and "provide a record for us to review" would amount to procedural error. *Pulley*, 601 F.3d at 667. Mendoza Rubio argues that the court erred here because it "did not mention or discuss co-defendant's sentences at all." But a "district court's correct calculation of the Sentencing Guidelines' range and imposition of a below-Guidelines sentence means that it necessarily considered the need to avoid unwarranted disparities." *United States v. Seymour*, 94 F.4th 679, 687 (7th Cir. 2024). Thus, the district court here—which imposed a sentence that was below the guidelines range and within the binding plea agreement range—did not need to "say a word about § 3553(a)(6)'s application . . . to satisfy the procedural requirement that he give that factor 'meaningful consideration.'" *United States v. Sanchez*, 989 F.3d 523, 541 (7th Cir. 2021) (quoting *United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012)).

That said, even absent procedural error, we remain "open in all cases to an argument that a defendant's sentence is unreasonable because of a disparity with the sentence of a codefendant." *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009). Mendoza Rubio argues that her sentence was disproportionate considering her role, responsibility, and financial gain in the conspiracy as compared to her coconspirators. De Oliveira, the cash carrier, received the same term of imprisonment as Mendoza Rubio—60 months—from the same district judge. *See United States v. Sinval De Oliveira*, No. 3:21-cr-81-wmc-3 (W.D. Wis. June 10, 2022), aff'd No. 22-2102, 2023 WL 2572216 (7th Cir. Mar. 20, 2023). Neto, who operated the bank accounts, was sentenced to eight months' imprisonment, running concurrently with sentences in other unrelated cases. *See United States v. Batista De Oliveira Neto*, 1:22-cr-20602-RNS (S.D. Fla. May 21, 2024). Other individuals who helped transport money were sentenced to 30 months' imprisonment and time served. *See United States v. Mario Amezcua-Cardenas*, 3:21-cr-81-wmc-1 (W.D. Wis. May 19, 2022); *United States v. Moises Amezcua-Cardenas*, 3:21-cr-81-wmc-2 (W.D. Wis. June 21, 2022). And one of the nominal account holders was sentenced to time served. *See United States v. Denise Webley*, 3:23-cr-125-wmc-1 (W.D. Wis. Sept. 5, 2025).

While Mendoza Rubio's sentence is on the higher end of the group, it is reasonable. For one, her argument to the contrary has less "force" because the court did not "depart[] from a correctly calculated Guidelines range," *Statham*, 581 F.3d at 556, but rather sentenced her within a presumptively reasonable below-guidelines range, *see Pulley*, 601 F.3d at 668; *see also United States v. Trudeau*, 812 F.3d 578, 594 (7th Cir. 2016) ("A below-guidelines sentence will almost never be unreasonable."). Further, as the district court noted, Mendoza Rubio's

role as the scheme's accountant was distinct from that of any other coconspirator—her skills provided the "ideal front" for "legitimizing" financial transactions that were "not legitimate from beginning to end." And in each transaction, she was the only point of contact with the client. Considering that her coordination was pivotal to the money laundering scheme, the district court did not abuse its discretion by sentencing Mendoza Rubio to a lengthier term of imprisonment.

\* \* \*

The judgment of the district court is AFFIRMED.